# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAVON PHILLIPS, <br> ALTON W. CUMBO, <br><br> Plaintiffs <br><br> v. <br><br> SGT. OLUWEMIMO SAIBU, <br> CO II ORIYOMI BOBOE, <br> COII MILTON TARKANG, <br> COII ABEEB KAZEEM, <br> SGT. ADEMOLA IDOWU, <br> COII ADEMOLA ADENIYI, <br><br> Defendants | Civil Action No. PWG-17-3221 <br> (Consolidated with PWG-17-3305) |

## MEMORANDUM OPINION

Self-represented Plaintiffs Davon Phillips and Alton W. Cumbo filed this lawsuit pursuant to 42 U.S.C. § 1983. They raise Eighth Amendment claims of excessive force and denial of treatment for exposure to pepper spray arising from an incident on September 23, 2017, at Jessup Correctional Institutional (JCI) in Jessup, Maryland. Defendants Sergeant Ademola Idowu and Correctional Officers Oriyomi Boboe, Milton Tarkang, Abeeb Kazeem, Ademola Adeniyi, and Oluwemimo Saibu have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which they supplemented. ECF Nos. 21, 24.[1] A hearing is not necessary. *See* Loc. R. 105.6. For the following reasons, Defendants' Motion will be granted as to all but the excessive force claim against Kazeem and denied without prejudice as to that claim only.

---

[1] Pursuant to the dictates of *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), Plaintiffs were notified in writing on May 11, 2018, of Defendants' Motion and that they were entitled to file an opposition with supporting materials, including affidavits, declarations and other records. ECF No. 22, 23. Neither Plaintiff filed responsive materials, and the time for doing so has passed.

**BACKGROUND**

Plaintiffs, who were cellmates at the time of the incident at issue, claim that Saibu, Boboe, Tarkang, Kazeem, Idowu, and four unknown officers approached their cell on September 23, 2017, at 10:00 p.m., with the intent to use excessive force. According to Plaintiffs, Idowu signaled to Officer Adeniyi, who was in the control area, to open the cell door. Cumbo claims Kazeem used handcuffs like "brass knuckles" to hit him in the eye[2] and Idowu struck Phillips. Compl. 2, ECF No. 1; Phillips Supp. 3, ECF No. 8, Cumbo Supp. 5, ECF No. 12; IID Report 5, ECF No. 21-4 (Phillips reported to IID investigator that an officer hit Cumbo in the eye). In addition, Cumbo claims he and Phillips were sprayed with an unreasonable amount of "mace." Cumbo Supp. 5, 7. Phillips claims that Kazeem and Idowu "struck" Cumbo and that he and Cumbo both were "sprayed uncontrollabl[y] with mace cans." Compl. 2; Phillips Supp. 3. Notably, while each Plaintiff claims that Idowu struck the other Plaintiff, neither claims that Idowu struck him.

Plaintiffs were left in the cell for approximately 40 minutes before being escorted for medical evaluation. Compl.; Phillips Supp. 3; Cumbo Supp. 5, 7. Cumbo asserts that Sgt. Idowu closed the feed-up slot, which caused the two cellmates to "suffer loss of air circulation without medical attention." Cumbo Supp. 5, 7. Cumbo claims that he and Phillips slipped on the mace covering the cell floor and fell, causing them to injure their backs, legs, necks, and hands. *Id.* at 5. When they were taken to the medical room, Cumbo claims he and Phillips were "minorly treated" and escorted afterward to another cell where they remained for the rest of the evening. *Id.* Phillips contend that, even though they "pursued every officer that made rounds," they were not

---

[2] Curiously, Defendants do not address this claim at all. The Court will deny summary judgment without prejudice as to the claim Officer Kazeem used handcuffs to hit Cumbo in the eye. The Court will grant Kazeem twenty-eight days to respond to this claim. Cumbo will be given twenty-eight days thereafter to reply.

provided with a shower, change of clothing, or a mattress that night. Phillips Supp. 3; Cumbo Supp. 5. Cumbo claims that he and Phillips "continued to pursue every officer who made rounds on the tier,[3] but they all ignored their needs and pleas." Cumbo Supp. 5.

Following the incident, on November 1, 2017, Phillips filed a complaint against Defendants Saibu, Boboe, Tarkang, and Kazeem, in which he alleged they, and other unidentified officers, used excessive force against him at JCI on September 23, 2017. Compl. On November 8, 2017, Cumbo filed a separate complaint in which he included Phillips as a plaintiff.[4] Cumbo alleged that Idowu, Tarkang, Kazeem, Boboe, Saibu, and Adeniyi used excessive force against him during the same September 23, 2017 incident.[5] ECF No. 1 in PWG-17-3305. The Court consolidated both cases under Civil Action No. PWG-17-3221 on March 26, 2018. ECF No. 11. Phillips seeks $150,000 to $800,000 in damages and an order requiring all officers involved to be relieved of their duties. Compl. 3; Phillips Supp. 3. Cumbo is seeking $900,000 in damages. Cumbo Supp. 9.

Defendants filed their dispositive motion, along with declarations and verified records, including a DVD recording of the incident, and a report by the Department of Public Safety and Correctional Services' Intelligence and Internal Investigation Division (IID). Cumbo viewed the

---

[3] Plaintiffs claim Officer Paul, Office Fox, and Officer Alto, along with those on the 11-7 shift ignored the cellmates' "pleas." Phillips Supp. 3; Cumbo Supp. 5. None of these officers is a named Defendant.

[4] Only Cumbo signed the Complaint in PWG-17-3305. Compl. 11, ECF No. 1 in PWG-17-3305. Cumbo and Phillips each may represent himself in this proceeding. They may not represent each other since only members of the Bar of this Court may represent another's legal interests. *See* Loc. R. 101.1.a.

[5] On July 19, 2018, Cumbo notified the Court that he is presently incarcerated at North Branch Correctional Institution (NBCI). ECF No. 25. The Maryland Inmate Locater indicates that Phillips also was transferred to NBCI, although he did not notify the Court of his new address. *See* http://www.dpscs.state.md.us/inmate/search (viewed January 17, 2019). The Clerk shall change the docket to reflect their current addresses.

3

DVD on May 14, 2018. Lieutenant George Harrison, II Decl., ECF No. 24-1. Phillips viewed the DVD on May 17, 2018. Erika Fitch, Litigation Coordinator, JCI, Decl., ECF No. 24-2. Yet neither of them responded to Defendants' motion or verified any of their filings. The evidence that Defendants filed provides a different perspective than Plaintiffs' unverified filings.

Based on the undisputed evidence, Cumbo told the IID investigator that he had thrown stale milk onto the tier floor at about 9 p.m. on the night of the incident. IID Report 4. Officer Tarkang observed what he believed to be bodily fluids thrown from cell D-C-323 (Plaintiffs' cell) and heard banging on the cell door. Tarkang Decl. ¶ 5, ECF No. 21-5. Tarkang notified Sergeant Idowu. *Id.*

Idowu, Tarkang, Boboe, and Kazeem went to Plaintiffs' cell to investigate.[6] IID Report 5-6; Tarkang Decl. ¶ 6; Boboe Decl. ¶ 5, ECF No. 21-7; Kazeem Decl. ¶ 5, ECF No. 21-8. Adeniyi was serving as the Control Officer for the D-Building at the time. Adeniyi Decl. ¶ 5, ECF No. 21-9; ECF No. 4 at 7.[7]

Plaintiffs kicked their cell door open and were ordered to move back into the cell. Idowu Decl. ¶ 7, ECF No. 21-6; Tarkang Decl. ¶ 6; Boboe Decl. ¶ 6; Kazeem Decl. ¶¶ 6-7; IID Report 4. Idowu instructed Adeniyi by radio to secure the door. Idowu Decl. ¶¶ 7-8; Adeniyi Decl. ¶ 5; Kazeem Decl. ¶7. Cumbo refused multiple orders to step back into the cell. IID Report 4; Idowu Decl. ¶ 8, Kazeem Decl. ¶ 7. Cumbo lunged toward Idowu and started punching him and correctional staff. Idowu Decl. ¶ 9; Tarkang Decl. 3; Boboe Decl. ¶ 7; Boboe Decl. 3; Kazeem

---

[6] Idowu initially was accompanied by Officers Boboe, Kazeem, Tarkang, Kingsley Opara, and Omobolaji Ajao. Officers Akinwumi Akinloseye and Olajide Famudehin later joined them. IID Report 5-9.

[7] Adeniyi's shift ended at 10:30 p.m. on September 23, 2017, and he clocked out. Payroll Records, ECF No. 21-3, at 9; Adeniyi Decl. ¶ 7.

4

Decl. ¶ 8; IID Report 7, 8; DVD, IID Case No: 17-35-01916, at 21:00:29, ECF No. 21-11. Phillips also briefly exited the cell. DVD at 21:00:31.[8]

Idowu sprayed his "fogger"[9] to defend himself and correctional staff and in an attempt to gain Cumbo's and Phillips's compliance. Idowu Decl. ¶ 9. Once Plaintiffs stopped fighting and returned to the cell, the door was secured, and the officers left. Idowu Decl. ¶ 10; DVD at 20:59:48-21:42:00. The entire incident lasted under two minutes.

Less than three minutes after the door was closed, Plaintiffs opened the slot of the cell door and started throwing things onto the tier floor. DVD at 21:03:50-21:10:15. Twenty-eight minutes after the cell door was secured and eighteen minutes after Plaintiffs stopped throwing items onto the tier floor, correctional officers removed Plaintiffs from cell D-C-323 and handcuffed them for escort to the medical unit for evaluation. DVD at 21:28:50- 21:33:30.

Officers Oyebode Komolafe and Nnamdi Dike escorted Plaintiffs to the medical unit. DVD at 21:33:30-21:34:50. Plaintiffs waived medical evaluation for pepper spray exposure and each signed a release of responsibility form. Phillips Med. Recs. 2, ECF No. 21-12; Cumbo Med. Recs. 2, ECF No. 21-13.[10] Plaintiffs then were placed in cell D-C-317, Prison Recs., ECF No. 21-3, at 13, which has a sink and access to water, Idowu Decl. ¶ 13, ECF No. 32-6.

Idowu, Boboe, Tarkang, Kazeem and Saibu ended their shifts at 11:00 p.m. on September 23, 2017 and clocked out. They did not escort Plaintiffs to or from the medical unit, nor were they involved in Plaintiffs' medical care after the incident. Tarkang Decl. ¶¶ 8-9; Idowu Decl. ¶¶ 11,

---

[8] The Court has reviewed the DVD and finds it consistent with Defendants' description and IID Report. *Compare* DVD, *with* Defs.' Mem.; IID Report 9-10.

[9] The "fogger" disburses pepper spray. Tarkang Decl. ¶ 7.

[10] Cumbo was seen by a medical provider on September 25, 2017, for complaints of chest pain, but did not voice any complaints directly related to the September 23, 2017 incident. Cumbo Med. Recs. 3.

12; Boboe Decl. ¶¶ 9-10; Kazem Decl. ¶ 10; Adeniyi Decl. ¶ 8; Saibu Decl. ¶¶ 6, 7, ECF No. 21-10.

**STANDARD OF REVIEW**

Defendants' dispositive Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Because Defendants have filed and relied on declarations and exhibits attached to their dispositive Motion, and Plaintiffs were notified of the dispositive motion, it shall be treated as one for summary judgment. *See id.*

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other

materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 381 (2007).

**DISCUSSION**

Personal fault is necessary to establish liability under 42 U.S.C. § 1983, whether based on the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), *rev'd on other grounds*, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (for an individual defendant to be held liable pursuant to § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights") (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971), *aff'd*, 451F.2d 1011 (4th Cir. 1971)). An individual cannot be held liable under § 1983 under a theory of respondeat superior.[11] *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Thus, to establish § 1983 liability, a plaintiff must

---

[11] Respondeat superior is a legal doctrine that in some circumstances an employer is responsible for the actions of employees performed within the course of their employment.

show that a defendant was personally involved in the alleged deprivation of his constitutional rights, *Vinnedge*, 550 F.2d at 928–29, or establish the defendant's liability as a supervisor, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). A defendant may be liable under the theory of supervisory liability in a § 1983 action if (1) the defendant had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive risk of a constitutional injury; (2) the defendant's response to that knowledge was so inadequate as to show deliberate inference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between defendant's inaction and the alleged constitutional injury. *Shaw*, 13 F.3d at 799.

Plaintiffs do not allege any basis for supervisor liability. Nor do they allege that any named Defendants were involved in their medical treatment or the post-incident denial of a shower, mattress or bedding after the incident. Therefore, the claims against Idowu, Boboe, Tarkang, Kazeem, Adeniyi and Saibu based on denial of medical treatment and their treatment after the incident will be dismissed.[12]

Additionally, Adeniyi, who was in the control area, was not physically present during the incident. Adeniyi Decl. Also, Saibu was working in D Building and was not present, nor did he observe the incident. Saibu Decl. ¶ 5; *see id.* at 3. Accordingly, summary judgment will be granted in Adeniyi's and Saibu's favor on the excessive force claims. This leaves Plaintiffs' excessive force claims against Boboe, Tarkang, Idowu and Kazeem.

### Excessive Force Claim against Boboe, Tarkang, and Idowu

---

[12] Temporary confinement without a mattress for longer periods has been held to be constitutional. *E.g.*, *Lowery v. Bennett*, 492 F. App'x 405, 407 (4th Cir. Aug. 9, 2012) (10-days on strip-cell confinement without "personal hygiene items, religious books, mattress, bedding, towels, and clothing" not unconstitutional); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (four days without clothes, mattress, water, bedding, legal mail or hygienic supplies not a violation of Eighth Amendment); *Lucas v. Lowicki*, GJH-17-1018, 2018 WL 4384154, at * 5 (D. Md. Sept. 14, 2018) (10 days in strip cell "without a mattress, blanket and bedsheets under extremely cold cell temperature" not unconstitutional).

A convicted inmate's claim of use of excessive physical force is examined in the context of the Eighth Amendment's prohibition against cruel and unusual punishment. *See Whitley v. Albers,* 475 U.S. 312, 319–21 (1986); *see also Hudson v. McMillan,* 503 U.S. 1, 7–9 (1992). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *see also Makdessi v. Fields,* 589 F.3d 126, 132 (4th Cir. 2015). The use of force by a prison official violates an inmate's Eighth Amendment rights when such force is "inconsistent with contemporary standards of decency," *Estelle v. Gamble,* 429 U.S. 97, 103 (1976), or is " 'repugnant to the consciousness of mankind.' " *Wilkins v. Gaddy,* 559 U.S. 34, 38 (2010) (citation omitted). Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U. S. at 6-7. This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins*, 559 U.S. at 34. The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38. "In considering the reasonableness of an officer's actions, [the court] must consider the facts at the moment that the challenged force was employed." *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Thus, in excessive force cases, the subjective component is measured by the same standard as the

objective: "whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.*

The Fourth Circuit has held that "'[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas, or other chemical agents in quantities greater than necessary or for the sole purpose of inflicting pain.'" *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996)) (emphasis omitted). However, pepper spray is not "per se a cruel and unusual punishment," *McCargo v. Mister*, 462 F.Supp. 813, 818 (D. Md. 1978), and can be used to "control a recalcitrant inmate" without violating the Eighth Amendment, *Williams*, 77 F.3d at 763. Where an inmate repeatedly ignores official commands, multiple applications of pepper spray have been found reasonable. *See Williams*, 77 F.3d at 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan*, 19 Fed. App'x 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell); *Norris v. Detrick*, 918 F.Supp. 977, 984 (N.D. W. Va. 1996) (upholding use of two blasts of pepper spray when inmate refused to return to his cell).

As noted, Plaintiffs have not provided any verified statement or record evidence to contradict Defendants' DVD or verified records. Thus, Plaintiffs do not dispute standing in the doorway to prevent the cell door from shutting, that Cumbo refused multiple orders to step back into the cell, and Cumbo violently punched Idowu and other officers. The Court has reviewed the DVD and finds it consistent with Defendants' description of the incident and the IID report. The DVD shows officers stood by the cell entrance for a period sufficient to order Cumbo to move

back into the cell.[13]  Then several punches can be seen coming toward the officers.  Both inmates then exited the cell.  One inmate, presumably Cumbo, can be seen attacking officers by punching them with a closed fist.  Meanwhile, the second inmate, presumably Phillips, returned inside cell.  Idowu can be seen administering short burst of pepper spray to Cumbo, as he escapes from the cell while punching correctional staff, and then moves down the tier toward another cell.  After Idowu sprayed the inmate again, he headed back to his cell as another spray was administered and the cell door closed.  DVD.

Plaintiffs' attack on the officers and escape from the cell, coupled with their refusal to comply with lawful orders, posed immediate, serious safety and security risks to correctional staff and other inmates.  Clearly, Plaintiffs created a dangerous situation for which some use of force was needed to restore institutional safety and security.  Further, Plaintiffs have not provided any evidence to show that more pepper spray was administered than necessary or for the sole purpose of inflicting pain.

Notably, Plaintiffs do not allege who, in particular, administered the pepper spray.  The DVD shows that Idowu administered several short bursts of pepper spray and stopped once the cell door was secured.  On the evidence before the Court, the use of pepper spray was reasonable; it was brief and used only as necessary to gain Plaintiffs' compliance.  Use of chemical agents is reasonable when an officer is attempting to maintain order and discipline in the institution.  *Santiago v. Walls,* 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (holding use of pepper spray during prison riot appropriate).

---

[13]  There is no sound on the recording.  The recording does not identify the inmates and officers.  DVD.

After reentering their cell, Plaintiffs opened the cell slot and started ejecting items.[14] Three officers returned to talk to Plaintiffs and check on them. DVD at 21:28:49-21:30:42. Minutes later, officers handcuffed Plaintiffs and escorted them to the medical unit. DVD at 21:34:36. Even though they alleged otherwise, Plaintiffs do not now dispute the evidence that they waived medical treatment and were then placed in a cell where there was running water available to wash the pepper spray off. Even when the facts are viewed in a light favorable to Plaintiffs, an Eighth Amendment violation for excessive use of force against Boboe, Tarkang, or Iduwo is not apparent on this record. These Defendants are entitled to summary judgment as a matter of law as to this claim.

**Excessive Force Claim against Kazeem**

Defendants do not address Cumbo's allegation that Officer Kazeem hit him in the eye with a pair of handcuffs. The DVD shows that at least one officer held a pair of handcuffs in his hand, as described by Cumbo. DVD at 21:00:14. Summary judgment is not appropriate on this claim, given the absence of a response, and Defendants' motion will be denied without prejudice as to this claim. Defendant Kazeem may address this claim within twenty-eight days. Cumbo may file a reply twenty-eight days after Kazeem's motion is filed.

**CONCLUSION**

For these reasons, the Court will grant Defendants' Motion to Dismiss or for Summary Judgment, treated as a motion for summary judgment, as to Defendants Idowu, Boboe, Tarkang, Adeniyi and Saibu. It also will grant the motion as to the claim that Defendant Kazeem denied Plaintiffs medical treatment and services after the incident. The Court will deny summary

---

[14] This contradicts Cumbo's unsupported assertion that Idowu closed the door slot, causing loss of air circulation. Cumbo Supp. 5, 7. Some of the items were clothing while others are not readily identifiable on the recording. DVD.

judgment without prejudice as to Cumbo's claim that Kazeem hit him in the eye with handcuffs. Kazeem is granted twenty-eight days to file a responsive pleading addressing this claim.

    A separate order follows.

| | |
|---|---|
| February 8, 2019 | /S/ |
| Date | Paul W. Grimm |
| | United States District Judge |